ZECHAR

v.

OHIO DEPARTMENT OF EDUCATION.

2002-Ohio-6873.]

Court of Claims of Ohio.

No. 2001–01221.

Decided Nov. 26, 2002.

**54**

William J. O'Malley, for plaintiff.

Betty D. Montgomery, Attorney General, and Larry Y. Chan, Assistant Attorney General, for defendant.

---

FRED J. SHOEMAKER, Judge.

{¶ 1} Plaintiff brings this action against defendant alleging that she was wrongfully terminated in violation of the federal Family Medical Leave Act ("FMLA") and public policy.[1] Defendant denied liability and the case was tried to the court.

---

1. At trial, the court was informed that plaintiff would not pursue her claim for intentional infliction of emotional distress.

{¶ 2} Plaintiff began her employment with defendant on August 3, 1992, as an Education Employee Consultant 3 ("EEC"), an unclassified position. Pursuant to R.C. 3301.13, plaintiff served at the pleasure of defendant's superintendent. Plaintiff's duties included assisting with the administration of Veterans Administration ("VA") programs and reviewing educational programs that received VA funds. Plaintiff visited schools and training program sites to ensure compliance with VA standards and to evaluate student progress. Following the visits, plaintiff prepared reports that specified her findings regarding compliance.

{¶ 3} Claudia Jones, an Educational Administrator, supervised plaintiff and three other EECs in defendant's Veterans Training unit. According to plaintiff, her relationship with Jones began to deteriorate in May 1997 after plaintiff used almost three months of sick leave as a result of a motor vehicle accident. Plaintiff testified that Jones telephoned her while she was on sick leave and implied in a "threatening" manner that plaintiff was not sick. In response to Jones's phone call, plaintiff sent a letter of complaint to defendant's Assistant Director, Dr. Dunnerstick, which detailed plaintiff's version of the conversation. (Plaintiff's Exhibit 7.) Plaintiff stated in the letter that Jones asked her if she had placed a "hit me" sign on the back of plaintiff's car and whether she "had been stealing plants from the office at night." However, Jones denied making the statements about the sign or the plants and testified that she had called plaintiff to discuss issues related to work rather than to criticize plaintiff for taking leave.

{¶ 4} On August 30, 1999, plaintiff submitted four additional requests for sick leave and vacation leave related to a surgical procedure. On that same date, plaintiff met with Jones and Robert Sommers, Jones's supervisor. Although Jones testified that the primary purpose of the meeting was not to discuss plaintiff's absenteeism, plaintiff testified that her leave requests were the main topic of the meeting and that both Jones and Sommers criticized her for taking an excessive amount of sick leave. According to plaintiff, Sommers became upset when he learned that plaintiff had requested additional leave. Nevertheless, Jones granted all of plaintiff's August 30, 1999 leave requests.

{¶ 5} At the time plaintiff submitted her FMLA leave requests, the Veterans Training unit was facing a budget crisis. On August 16, 1999, Jones received a message concerning VA budget projections for the next fiscal year that showed a projected $83,000 funding reduction for her unit. On September 2, 1999, in response to her inquiry, Jones received a confirmation that the VA budget projections were accurate and had not been revised. On September 27, 1999, Jones sent a memorandum to Sommers that reviewed the budget allocations and proposed the elimination of plaintiff's position to offset the reduction in funding. Jones's memorandum explained that the recommendation was based upon a review of performance evaluations that had been conducted in accordance with

VA performance standards. The memorandum listed nine areas of concern with plaintiff's performance that had been documented in performance evaluations. Jones estimated that the elimination of plaintiff's position would reduce agency expenditures by $85,700.

{¶ 6} During the month of September 1999, while plaintiff was recuperating from her surgery, she was also in the process of finalizing the adoption of a child for whom she had previously been a foster parent. On September 17, 1999, plaintiff faxed Jones a leave request form with a note requesting "adoption leave" for the two-week period beginning September 20, 1999. Jones recommended approval of the leave request.

{¶ 7} After plaintiff returned from her initial period of adoption leave, she was informed by defendant's Human Resources Department that she was eligible for an additional two weeks of FMLA adoption leave. On Sunday, October 17, 1999, plaintiff faxed another request for adoption leave for the period from October 18–29, 1999. On October 18, 1999, Jones recommended that plaintiff's second request for adoption leave be approved without discussing the matter with plaintiff. When plaintiff returned to work on or about November 3, 1999, she received a letter dated October 20, 1999, from Susan Zelman, defendant's Superintendent of Public Instruction, notifying plaintiff that her position was being eliminated effective November 19, 1999, due to a budget reduction.

{¶ 8} Plaintiff asserts that her employment was terminated in retaliation for exercising her right to take FMLA leave. Defendant maintains that it eliminated plaintiff's position in response to a VA funding reduction and that its decision was based upon a determination that plaintiff's performance fell below that of the other EECs in her department.

{¶ 9} The FMLA provides eligible employees up to 12 work-weeks of unpaid leave in any 12–month period "for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." Sections 2601(b)(2) and 2612, Title 29, U.S.Code. The FMLA prohibits employers from discriminating against employees for exercising their rights under the Act. Section 2615(a)(2). Basing an adverse employment action on an employee's use of leave or retaliation for exercise of FMLA rights is therefore actionable. *Skrjanc v. Great Lakes Power Serv. Co.* (C.A.6, 2001), 272 F.3d 309. An employee can prove FMLA retaliation circumstantially, using the method of proof established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of retaliation circumstantially, plaintiff must show that she exercised rights afforded by the FMLA, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action. *Robinson v. Franklin Cty. Bd. of Commrs.* (Jan. 28, 2002),

S.D.Ohio No. 99–CV–162, 2002 WL 193576; *Soletro v. Natl. Fedn. of Indep. Business* (N.D.Ohio 2001), 130 F.Supp.2d 906; *Darby v. Bratch* (C.A.8, 2002), 287 F.3d 673, 679.

{¶ 10} It is undisputed that plaintiff used leave to adopt a child and that her position was terminated.[2] However, defendant asserts that plaintiff has failed to establish a causal connection between the use of leave and her termination.

{¶ 11} Plaintiff contends that she has satisfied the causal connection element of her claim because the termination of her position occurred in "some reasonable proximity to her FMLA leave of absence." The court may look to the temporal proximity between the adverse action and the protected activity to determine whether there is a causal connection. See *Harrison v. Metro. Govt. of Nashville & Davidson Cty., Tenn.* (C.A.6, 1996), 80 F.3d 1107, 1118–1119. However, other evidence is usually required, especially where the events are separated by more than a few days or weeks. Id. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. School Dist. v. Breeden* (2001), 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509. Nevertheless, a prima facie case requires only a minimal showing before shifting the burden to the employer to explain an adverse employment action. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407; *Sprenger v. Fed. Home Loan Bank* (C.A.8, 2001), 253 F.3d 1106, 1111. In this case, plaintiff's adoption leave ended on October 29, 1999, and she received notice that her position was going to be terminated on or about November 3, 1999. Considering the close proximity of these two events, and the fact that plaintiff was questioned by Jones and Sommers about using leave at the August 30, 1999 meeting, the court finds that plaintiff has presented sufficient evidence to establish a causal connection.

{¶ 12} Once a plaintiff has established a prima facie case, the employer must then articulate some legitimate reason for the employee's discharge. *LaPointe v. United Autoworkers Local 600* (C.A.6, 1993), 8 F.3d 376, 379; *McDonnell Douglas,* supra. If the employer meets this burden of production, then the burden shifts back to plaintiff to prove by a preponderance of the evidence that the reason proffered by defendant was not its true reason but merely a pretext for discrimination. *Ang v. Procter & Gamble* (C.A.6, 1991), 932

---

2. Although defendant attaches significance to the fact that plaintiff did not designate her leave requests as FMLA leave, an employee need only give notice that the reason for her absence is an FMLA qualifying reason and the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA. *Hammon v. DHL Airways, Inc.* (C.A.6, 1999), 165 F.3d 441, 450.

F.2d 540, 549. A plaintiff can prove pretext "by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge." *Ridenour v. Lawson Co.* (C.A.6, 1986), 791 F.2d 52, 56, quoting *La Montagne v. Am. Convenience Products, Inc.* (C.A.7, 1984), 750 F.2d 1405, 1414–1415. Once the employer has put forward a nondiscriminatory reason for the adverse action, plaintiff must produce sufficient evidence from which the trier of fact may reasonably reject the employer's explanation. *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6, 1994), 29 F.3d 1078.

{¶ 13} In this case, defendant has put forth several nondiscriminatory reasons for eliminating plaintiff's position. As discussed above, Jones contends that her recommendation to eliminate an EEC position was made in response to a budget reduction that was announced before plaintiff requested FMLA leave. Jones's recommendation was forwarded to Sommers and, according to memoranda that were admitted as evidence at trial, Sommers's colleagues considered the recommendation before the termination letter was submitted to defendant's superintendent for signature. Additionally, in her trial testimony, plaintiff acknowledged that she had received several performance evaluations that documented "opportunities" for improvement. Plaintiff acknowledged that her evaluations included comments that urged her to improve the accuracy, thoroughness, and timeliness of her reports and stated concerns about plaintiff's "diplomacy skills" and tactfulness. Upon review of the testimony and evidence, the court finds that defendant has articulated legitimate reasons for its actions. Therefore, the burden shifts back to plaintiff to prove by a preponderance of the evidence that the reason proffered by defendant was not its true reason but merely a pretext for discrimination.

{¶ 14} One method of proving pretext is to show that the employer's proffered explanation had no basis in fact. *Ridenour*, supra, at 56. However, plaintiff does not dispute the existence or timing of the budget cut. Plaintiff has also failed to show that the funding reduction was not the motivating factor in the decision to eliminate her position. The only support plaintiff has offered in this regard, aside from the temporal proximity between her leave and termination, is her testimony that Jones and Sommers criticized her for taking an excessive amount of leave. Plaintiff's mere allegations do not prove by a preponderance of the evidence that defendant's proffered reasons have no basis in fact or that the factors did not motivate her termination. Rather, the fact that plaintiff had received critical comments in her performance evaluations years before defendant was notified about the budget cut supports defendant's argument that its reasons were not pretextual. Defendant first learned of the budget cut on or about

August 16, 1999, before plaintiff submitted her FMLA leave requests. The court finds that the proffered reasons had a basis in fact and that those reasons alone were sufficient to motivate defendant to eliminate one of the EEC positions. Furthermore, plaintiff has not questioned defendant's decision to eliminate one of its EEC positions. Rather, plaintiff maintains that she was not the "weakest performer" and that she was better qualified than her peers based upon her education, experience, and work product.

{¶ 15}   As a general rule, this court will not substitute its judgment for that of the employer and will not second-guess the business judgments of employers regarding personnel decisions. See, e.g., *Watson v. Kent State Univ.* (Aug. 8, 1994), Ct. of Cl. No. 91–06627; *Dodson v. Wright State Univ.* (1997), 91 Ohio Misc.2d 57, 697 N.E.2d 287; *Washington v. Cent. State Univ.* (1998), 92 Ohio Misc.2d 26, 699 N.E.2d 1016.   Moreover, the testimony and evidence supports defendant's assertion that legitimate concerns regarding plaintiff's job performance existed prior to her FMLA leave requests and that the remaining EECs were well qualified and received more favorable job evaluations than plaintiff received.

{¶ 16}   The court notes that the elimination of plaintiff's position was just one part of a comprehensive plan to address the budget reduction.   In her September 27, 1999 memorandum to Sommers, Jones recommended taking additional budgetary action, such as eliminating a clerical position, requesting supplemental funds, and decreasing the number of supervisory site visits.   The court concludes that plaintiff has not carried the burden of showing that defendant's proffered reasons for eliminating her position were pretextual.   Consequently, plaintiff cannot prevail upon her FMLA claim.

{¶ 17}   Plaintiff also asserts a claim for wrongful discharge in violation of public policy based upon her FMLA claim.   However, the Supreme Court of Ohio has recently held that Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when that cause of action is based solely on a discharge in violation of the FMLA. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526.

{¶ 18}   For the foregoing reasons, judgment shall be rendered in favor of defendant.

{¶ 19}   This case was tried to the court on the issue of liability.   The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant.   Court costs are assessed against plaintiff.   The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

Judgment for defendant.

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.