

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SUSAN WARREN,

       Plaintiff,

       v.

CENTRAL STATE UNIVERSITY et al.,

       Defendants.

Case No. 2008-09520

Judge Clark B. Weaver Sr.
Magistrate Anderson M. Renick

MAGISTRATE DECISION

{¶1} Plaintiff brought this action alleging breach of contract, denial of rights under the federal Family and Medical Leave Act (FMLA), and disability discrimination. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} In March 2000, plaintiff began working as a clerk in defendant's payroll office and she was subsequently promoted to the position of "accounts payroll supervisor" in 2001.[1] On August 5, 2005, Kimberly Manigault, Director of Human Resources, notified plaintiff that she was appointed Interim Area Coordinator in the Residence Life Department. (Plaintiff's Exhibit 1.) On September 13, 2006, plaintiff signed a contract with defendant memorializing her appointment to the permanent position of Area Coordinator. (Plaintiff's Exhibit 2.)

{¶3} Plaintiff's duties as Area Coordinator included supervising Residence Hall Coordinators and Resident Advisors, developing policy and procedures for residence halls, and overseeing department programs.

{¶4} Plaintiff testified that on Wednesday, May 9, 2007, she was directed to report to the human resources office where she met with her supervisor, Raynaldo Gillus, Manigault, and Dr. Gregory Stewart, defendant's Vice President of Student

---

[1]As used herein, "defendant" shall refer to Central State University (CSU).

Affairs. According to plaintiff, Dr. Stewart informed her that "it was just not working out" and told her to sign a prepared letter of resignation. Plaintiff testified that she refused to sign the resignation letter and that Stewart told her to go home and come back Monday, May 14, 2007, at 9:00 a.m. On May 13, 2007, plaintiff notified Stewart and Manigault via email that she would be unable to attend the May 14, 2007 meeting due to her chronic skin condition.

{¶5} Plaintiff subsequently received a letter dated May 14, 2007 from John Garland, defendant's president, providing notice that her employment contract would terminate in thirty days and that, until such time, plaintiff had been placed on administrative leave. On May 17, 2007, both plaintiff and her physician signed a document titled "EMPLOYEE'S STATEMENT REGARDING LEAVE TO CARE FOR A FAMILY MEMBER" which states that plaintiff's condition was "chronic hives" with a probable "lifetime" duration. (Plaintiff's Exhibit 7.)

**BREACH OF CONTRACT**

{¶6} On September 13, 2006, plaintiff signed an "Employee Action Form" which, upon approval by defendant's board of trustees, became a contract for her employment as the permanent Area Coordinator. (Plaintiff's Exhibit 2.) The contract provides, in pertinent part, as follows:

{¶7} "The Appointee's signature on this form and with the approval of the Board of Trustees will become a contract between you (the Appointee) and Central State University [CSU], Wilberforce, Ohio. This contract will be subject to all policies, rules, regulations, union contracts (if applicable) and the availability of adequate funding. The Appointee shall have the right to terminate this agreement by submitting a written resignation to the President not less than thirty (30) days prior to its effective date; and the University may terminate this agreement prior to the expiration hereof on thirty (30) days notice to the Appointee or at any time for cause without notice. The University reserves the right and has the option to terminate this agreement if the Appointee becomes permanently disabled."

{¶8} "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach."

*Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.

{¶9} Plaintiff asserts that defendant committed a breach of the contract by terminating her employment without cause and without providing 30 days notice. However, plaintiff conceded that she received the May 14, 2007 letter from John Garland notifying her that she had been placed on administrative leave for 30 days and that she received her regular pay and benefits for that period of time. Plaintiff also testified that defendant allowed her to "cash out" the balance of vacation leave and that she transferred her sick leave balance to her new employer.

{¶10} According to the express terms of the contract, defendant had the right to terminate plaintiff's employment without cause upon providing her 30 days notice thereof. The court finds that Garland's May 14, 2007 letter provided plaintiff with the requisite 30 days notice. Accordingly, plaintiff's breach of contract claim is without merit.

**FMLA**

{¶11} With respect to plaintiff's FMLA claim, "[t]he FMLA provides eligible employees up to 12 work-weeks of unpaid leave in any 12-month period 'for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.' Sections 2601(b)(2) and 2612, Title 29, U.S.Code. The FMLA prohibits employers from discriminating against employees for exercising their rights under the Act. Section 2615(a)(2). Basing an adverse employment action on an employee's use of leave or retaliation for exercise of FMLA rights is therefore actionable. *Skrjanc v. Great Lakes Power Serv. Co.* (C.A.6, 2001), 272 F.3d 309. An employee can prove FMLA retaliation circumstantially, using the method of proof established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792 * * *. To establish a prima facie case of retaliation circumstantially, plaintiff must show that she exercised rights afforded by the FMLA, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action. *Robinson v. Franklin Cty. Bd. of Commrs.* (Jan. 28, 2002), S.D.Ohio No. 99-CV-162, 2002 WL 193576; *Soletro v. Natl. Fedn. of Indep. Business*

(N.D.Ohio 2001), 130 F.Supp.2d 906; *Darby v. Bratch* (C.A.8, 2002), 287 F.3d 673, 679." *Zechar v. Ohio Dept. of Edn.*, 121 Ohio Misc.2d 52, 2002-Ohio-6873, ¶9.

{¶12} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas,* supra, at 802. If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision. Id. at 804.

{¶13} Plaintiff testified that she requested FMLA leave both in 2005 and in 2006. On July 18, 2005, plaintiff first requested FMLA after her son was injured in an automobile accident. (Plaintiff's Exhibit 4.) On the same date, plaintiff signed an acknowledgment form showing that she had been briefed on FMLA policies, including both the use of sick and annual leave in conjunction with FMLA leave and the requirement for certification from her health care provider. (Plaintiff's Exhibit 5.) CSU's response to plaintiff's request shows that her FMLA leave would commence upon furnishing medical certification of a serious health condition on or before August 1, 2005. (Plaintiff's Exhibit 4.) Plaintiff testified that her FMLA documents were prepared by Phil Adamson, a CSU benefits coordinator.

{¶14} Plaintiff also requested FMLA leave as a result of "hives" outbreaks that caused a red rash on her skin, including her arms, legs, and neck. Plaintiff testified that she had experienced such outbreaks since the early 1990s and that despite medical treatment, the outbreaks became more severe and, at times, she would suffer pain and itching that would require her to remove clothing to reduce the irritation to her skin. Plaintiff stated that it was difficult for her to perform her duties during severe outbreaks.

{¶15} On May 11, 2006, plaintiff submitted a "certification" from her physician, Dawn Zacharias, M.D., which states that plaintiff's hives condition "is of a chronic nature" and that "the likely frequency and duration of periods of incapacity" is "intermediate" and "varies from weekly to monthly." (Plaintiff's Exhibit 6.) Plaintiff did not submit a request for FMLA leave; however, she testified that she was verbally informed that she had been granted FMLA leave at some time in 2006. Plaintiff testified that she would call her supervisor, Gillus, when she had one of her "episodes" and was unable to work. Plaintiff related that Gillus did not require her to complete written leave requests and that he tore up leave slips that she did submit. Plaintiff was able to perform some of her duties at her home by accessing defendant's computer system.

Plaintiff testified that Adamson informed her that she was approved for FMLA leave through May 2007.

{¶16} Based upon the evidence submitted by the parties, there is no dispute that plaintiff exercised rights afforded by the FMLA, that she was discharged from her employment, and that she was qualified for her position; however, the parties disagree whether there was a causal connection between plaintiff's exercise of rights and the adverse employment action.

{¶17} "The court may look to the temporal proximity between the adverse action and the protected activity to determine whether there is a causal connection." *Zechar*, supra, ¶11, citing *Harrison v. Metro Govt. of Nashville & Davidson Cty., Tenn.* (C.A.6, 1996), 80 F.3d 1107, 1118-1119. "'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.'" Id., quoting *Clark Cty. School Dist. v. Breeden* (2001), 532 U.S. 268, 273. However, the Sixth Circuit Court of Appeals has recently held that closeness in time is only one indicator of a causal connection and that temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim. *Spengler v. Worthington Cylinders* (C.A.6, 2010), 615 F.3d 481, 494.

{¶18} Manigault testified that the May 11, 2006 physician certification remained in effect for one year. Plaintiff testified that defendant received her second physician certification for FMLA leave which was signed on May 17, 2007 and that it was placed in her personnel file; however, plaintiff did not submit the second FMLA medical certification until after she had received notice that her position was being terminated and plaintiff conceded that she had not been denied FMLA leave at any time prior to receiving the termination letter. Although there was close proximity between the expiration of plaintiff's first FMLA medical certification and the decision to terminate plaintiff's position, the court finds that plaintiff has failed to present sufficient evidence to establish a causal connection. *Spengler,* supra.

{¶19} Furthermore, "'[a] reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory * * * an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery * * *.'" *Anderson v. Wellman Prods. Group*, 157 Ohio App.3d 565, 2004-Ohio-3420, ¶21, quoting *Bones v. Honeywell Int'l, Inc.* (C.A.10, 2004), 366 F.3d 869, 878-879. "[I]f an

employee's discharge would have occurred regardless of her request for FMLA leave, then that employee may be discharged even if discharge prevents her exercise of any possible right to FMLA leave." Id. at ¶19, citing *Bones*, supra, at 877.

{¶20} Even if plaintiff were able to establish a prima facie case, plaintiff could not prevail if defendant had legitimate, nondiscriminatory reasons for terminating her employment. *McDonnell Douglas,* supra.

{¶21} Stewart testified that plaintiff had been "underperforming" and he received "feedback" that plaintiff was not able to resolve certain problems that required her attention. According to Stewart, he had communicated his concerns to plaintiff before he made the decision to recommend that President Garland terminate plaintiff's employment. Stewart testified that he had no knowledge of plaintiff's medical condition, that plaintiff did not mention her medical condition when she was given the termination letter, and that his decision to recommend termination was unrelated to plaintiff's FMLA leave.

{¶22} Based upon the above facts and the applicable law, the court finds that defendant had legitimate, nondiscriminatory reasons for terminating plaintiff's employment. Accordingly, judgment in favor of defendant shall be recommended as to plaintiff's FMLA claim.

**DISABILITY DISCRIMINATION**

{¶23} Under Ohio law, an individual has a "disability" if he or she has "a physical or mental impairment that substantially limits one or more major life activities" of such individual. R.C. 4112.01(A)(13). The term "substantially limits" means: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Former 29 C.F.R. 1630.2(j). Further, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives," and "[t]he impairment's impact must also be permanent or long-term." See *Toyota Motor Mfg. v. Williams* (2002), 534 U.S. 184, 198.

**{¶24}** To establish a prima facie case of disability discrimination pursuant to R.C. 4112.02, plaintiff must demonstrate: "(1) that he or she was disabled; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and; (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question." *Yamamoto v. Midwest Screw Prods.*, Lake App. No. 2000-L-200, 2002-Ohio-3362, ¶18, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281. "Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. * * * [I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Hood v. Diamond Prods.*, 74 Ohio St.3d 298, 302, 1996-Ohio-259, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 198.

**{¶25}** Plaintiff asserts that defendant's employees were aware of her skin condition and that the termination of her employment constitutes discrimination "against a handicapped person." However, even if plaintiff could establish a prima facie case of disability discrimination based upon her skin condition, the burden would shift to defendant to set forth some legitimate, nondiscriminatory reason for the termination of plaintiff's employment. Based upon the evidence presented, the court is persuaded that Dr. Stewart's concerns with plaintiff's job performance constitute a legitimate, nondiscriminatory reason for her termination. Furthermore, plaintiff has not provided the court with any convincing evidence to prove that the stated basis for her termination was a pretext. Therefore, the court finds that plaintiff's claim of disability discrimination must fail.

**{¶26}** For the foregoing reasons, the court finds that plaintiff failed to prove any of her claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendants. *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion,*

*whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


_____
ANDERSON M. RENICK
Magistrate

cc:

Don A. Little
7960 Clyo Road
Clyo Professional Center
Dayton, Ohio 45459

Jessica R. Moss
7501 Paragon Road
Lower Level
Dayton, Ohio 45459

Eric A. Walker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Filed October 21, 2011
To S.C. reporter November 18, 2011