[Cite as *O'Malley-Donegan v. MetroHealth Sys.*, 2017-Ohio-1362.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 104544

## ANN O'MALLEY-DONEGAN

### PLAINTIFF-APPELLANT

vs.

## METROHEALTH SYSTEM, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-847212

**BEFORE:** McCormack, P.J., Stewart, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 13, 2017

**ATTORNEYS FOR APPELLANT**

Fred M. Bean
Brian D. Spitz
Spitz Law Firm
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122


**ATTORNEYS FOR APPELLEES**

Jon M. Dileno
David R. Vance
Zashin & Rich Co. L.P.A.
55 Public Square, 4th Floor
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Plaintiff-appellant Ann O'Malley-Donegan appeals from a judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of her former employer MetroHealth System ("MetroHealth") and her former supervisor Tina Szatala. Appellant asserts that MetroHealth terminated her employment in retaliation for her reporting an abuse by a nursing aide who raised all four rails of a resident's bed to confine the resident. After a review of the record and applicable law, we affirm the judgment of the trial court.

**Substantive Facts and Procedural Background**

{¶2} This matter stemmed from an incident on the night of September 22, 2012, at MetroHealth's Prentiss Center, a residential care facility for long-term care. A State Tested Nurse's Aide ("STNA") was in charge of the care of two residents who shared a room. According to the aide, one of the two residents, who suffered from dementia and had a history of behavioral problems, was screaming and banging her head on the walls all night. The aide raised all four rails of the resident's bed and moved her roommate to the hallway so that the roommate could get some sleep.

{¶3} Around 11:00 p.m., appellant, a licensed practical nurse ("LPN"), was about to begin her night shift at the Prentiss Center when another aide reported to her that a resident was "laying in her bed out in the hallway" outside her room. When appellant opened the door to the room to investigate, she found the other resident of the room on her chair with a night shirt on, while all four rails of her bed were raised. The resident in

the room told appellant that the aide would not take her to the restroom and she got out of her bed by sliding to the bottom of the bed. Appellant put the two residents to bed and admonished the aide, advising her that raising all four bed rails and closing the door, thereby isolating the resident, was abusive conduct.

{¶4} Appellant immediately verbally reported the incident to her intermediate supervisor, Hilary Lacerda. Sometime after midnight, she also provided a written statement to Lacerda, describing the aide's conduct as abuse. By early Sunday morning, two other managers, Evangeline Holleran and Beverly McQuaid, also learned about appellant's report of suspected abuse. To appellant's displeasure, the aide was not removed from her duty immediately — she still worked her 3-11 p.m. shift the next day, caring for the residents involved in the incident.

{¶5} On Monday morning, September 24, 2012, the administrator of the Prentiss Center, Tina Szatala, learned of the incident and quickly reported the incident to the Ohio Department of Health ("ODH"), submitting a "Self Reported Incident Form." The form contained statements that "a staff member * * * believed another staff member was abusive and neglectful toward a resident," and a box was checked for alleged physical abuse and neglect. There was also a notation in the form that all four of the resident's guardrails were raised.

{¶6} In addition to reporting the incident to the ODH, MetroHealth conducted an internal investigation on the same day. It concluded the incident did not constitute abuse, but determined that the aide's conduct was contrary to MetroHealth's established

practices.   MetroHealth issued a Final Written Warning to the aide for her handling of the two residents.

{¶7}   In response to the incident, MetroHealth provided additional training to its staff about preventing resident abuse and neglect.   On October 17, 2012, a meeting was held to address the care of patients with dementia and behavioral difficulties.   Appellant interrupted the meeting and admonished the administration for failing to thoroughly investigate her report of abuse.   She was told to wait until after the meeting to discuss her abuse allegation.   On the same day, appellant telephoned ODH and alleged an aide's abuse of a resident and MetroHealth's failure to properly investigate the abuse.   The next day, appellant went to the local police station and attempted to file a report of abuse but was advised to call the Elder Abuse Hotline.

{¶8}   After the October 17, 2012 meeting, Szatala requested a review from MetroHealth's legal department of  the September 22, 2012 incident.   The legal department recommended re-education of the staff concerning timely reporting of suspected abuse and neglect.   On October 19, 2012, MetroHealth conducted the recommended training class.   Appellant abruptly departed from the class.   She later explained she left due to urinary problems and went to her doctor's office.   Her doctor's notes indicated she reported a broken finger as well as urinary tract issues.

{¶9}   On October 24, 2012, ODH visited MetroHealth regarding the incident.   It later issued a report regarding its investigation.   ODH cited a prior incident involving the same resident where MetroHealth failed to ensure that the staff immediately report an

allegation of abuse to their supervisor. Regarding the September 22, 2012 incident, the report noted that the STNA involved in the incident received disciplinary action for her conduct and also that the staff did not follow the abuse protocol that required an immediate notification to a supervisor. The report noted the entire staff received training regarding the protocol of reporting suspected abuse. It also noted that the facility had determined that no abuse occurred, and further that the administration met the required time frame for reporting to the state agency once the administration became aware of the allegation. It concluded the administration's investigation was complete and thorough.[1]

{¶10} Appellant was dissatisfied with MetroHealth's responses to her report of the incident. She felt MetroHealth did not take her complaint of abuse seriously. She was displeased that MetroHealth did not immediately begin an investigation of the incident within 24 hours of the incident. She was also troubled that the aide involved was not immediately placed on leave pending the investigation — she still worked her normal shift on September 23, 2012, the day after the incident, caring for the same two residents involved in the incident. She felt aggrieved for having never been interviewed by either the administration or ODH regarding the incident.

{¶11} Prior to the bed-rail incident, between 2009 and 2012, appellant received several disciplinary actions, most of which related to her disagreement with MetroHealth

---

[1]The report stated in conclusion that "[t]he [facility's] investigation was complete and [thorough] and met the required time frame for reporting to the state agency, once administration became aware on the allegation. The facility determined that no abuse occurred."

about the handling of patients with a certain bacterial infection: (1) in December 2009, she received a three-day suspension for a "temper-tantrum" over her workload; (2) in September 2011, she received a verbal warning for exceeding the scope of her authority as an LPN and disobeying a directive from a supervisor; (3) in October 2011, she received a written warning for violating patient standards; (4) in January 2012, she received a reprimand for failing to follow instructions; and (5) in March 2012, she received a "Final Written Warning" for improperly diagnosing a resident and failing to accurately document the resident's medical chart.

{¶12} Six weeks after the bed-rail incident, on November 2, 2012, MetroHealth terminated appellant, citing the following policy violations: "(1) creating a hostile work environment; (2) disruption of business created [through] a refusal to follow procedures; and (3) repeated grossly inappropriate behavior." The disciplinary report cited her exhibition of an ongoing pattern of improper behavior, including her prior disciplinary actions in September 2011 for failure to follow procedures and March 2012 for grossly inappropriate behavior. It also cited her interruption of a training meeting and abrupt departure from another class.

{¶13} Appellant filed a grievance regarding her termination. Her union, however, subsequently withdrew the grievance and decided not to pursue arbitration.

{¶14} Sometime in 2013, appellant filed a complaint against MetroHealth and Szatala, claiming her discharge was retaliatory in response to her report of the abuse incident. Specifically, she claimed her discharge was retaliation prohibited by two

statutes: R.C. 3721.24 and 4113.52. After MetroHealth and Szatala filed a motion for summary judgment, appellant dismissed her complaint.

{¶15} On June 22, 2015, appellant refiled her complaint against MetroHealth and Szatala, asserting the same retaliation claims under the two statutes and adding claims of wrongful discharge in violation of public policy and intentional infliction of emotional distress. Appellant subsequently dismissed the wrongful discharge claim and the R.C. 4113.52 retaliation claim against Szatala.

{¶16} MetroHealth and Szatala moved for summary judgment on the remaining claims — R.C. 3721.24 retaliation claim against both, R.C. 4113.52 retaliation claim against MetroHealth, and intentional infliction of emotional distress against both. The trial court granted summary judgment in favor of MetroHealth and Szatala. On appeal, appellant raises the following assignments of error:

1. The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether O'Malley-Donegan met her prima facie case for retaliation under R.C. 3721.24.

2. The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether O'Malley-Donegan met her prima facie case for retaliation under R.C. 4113.52.

3. The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether appellees' alleged reasons for terminating O'Malley-Donegan were a pretext for retaliation under R.C. 3721.24 and/or R.C. 4113.52.

4. The trial court committed reversible error by determining that no genuine issue of material fact remained as to O'Malley-Donegan's claim for intentional infliction of emotional distress.

**{¶17}** Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C). We review the trial court's judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**Retaliatory-Discharge Claim under R.C. 3721.24**

**{¶18}** R.C. 3721.22(A) requires a licensed health professional to report suspected abuse or neglect to the ODH. R.C. 3721.24 provides a retaliatory-discharge cause of action for employees who are terminated for reporting suspected abuse or neglect of long-term-care-facility or residential-care-facility residents.[2] *Hulsmeyer v. Hospice of S.W. Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 14.

---

[2]R.C. 3721.24(A) states:

(A) No person or government entity shall retaliate against an employee or another individual used by the person or government entity to perform any work or services who, in good faith, makes a report of suspected abuse or neglect of a resident or misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation. For purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.

**{¶19}** To establish a prima facie case for retaliatory discharge under R.C. 3721.24, appellant must show that (1) she engaged in a protected activity; (2) that she was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div*., 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (9th Dist.1994).

**{¶20}** Once an employee establishes a prima facie claim of retaliation, then the burden shifts to the employer to show that there was a legitimate reasons for the discharge. If the employer can establish a legitimate reason, the burden shifts back to the employee to show that the employer's articulated reason was pretextual. *Dolan v. St. Mary's Mem. Home*, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716, ¶ 19 (1st Dist.).

**{¶21}** There are several ways in which an employee may show that her employer's proffered reasons for dismissing her are pretext. The plaintiff may demonstrate pretext by showing: "(1) that the stated reasons for her firing had no basis in fact, (2) that the stated reasons for her firing were not the actual reasons, and (3) that the stated reasons for her firing were insufficient to explain the discharge." *Thompson v. Merriman CCRC, Inc*., 9th Dist. Summit No. 23229, 2006-Ohio-6008, ¶ 23, citing *Harris v. Elec. Data Syst. Corp*., 6th Cir. No 94-1888, 1996 U.S. App. LEXIS 6109 (Mar. 6, 1996). To avoid summary judgment, the employee must present some evidence that the employer's proffered reason was false. *Surry v. Cuyahoga Comm. College*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, ¶ 24 (8th Dist.).

{¶22} In this case, concerning appellant's prima facie case for her retaliatory-discharge claim under R.C. 3721.24, it is undisputed that her reporting of what she believed to be an abuse of a resident was a protected activity under that statute, and that she was subsequently discharged. The only question that remains is whether there was a causal link between her report of the bed-rail incident and her termination.

{¶23} To determine a causal link between the employee's discharge and the protected activity, the court may look to the temporal proximity between the two events. *Ningard v. Shin Etsu Silicones*, 9th Dist. Summit No. 24524, 2009-Ohio-3171, ¶17, citing *Zechar v. Ohio Dept. of Edn.*, 121 Ohio Misc.2d 52, 2002-Ohio-6873, 782 N.E.2d 163 , ¶ 11 (Ct. of Cl.). The temporal proximity must be "very close" to create such an inference. *Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261, ¶28. *See Merriman* at ¶ 17 (a period of three or four month has been deemed as insufficient to establish casualty); *Hall v. Banc One Mgt. Corp.*, 10th Dist. Franklin No. 04AP-905, 2006-Ohio-913, ¶ 47, *rev'd on other grounds,* 114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290 (an interval of two months was held to dilute the inference of causation); *Thatcher v. Goodwill Indus.*, 117 Ohio App.3d 525, 535, 690 N.E.2d 1320 (9th Dist.1997) (an interval of three weeks held to be sufficient to establish a causal link).

{¶24} "[O]ther evidence is usually required, especially where the events are separated by more than a few days or weeks." *Zechar* at ¶ 11, citing *Harrison v. Metro Govt. of Nashville & Davidson Cty., Tenn.*, 80 F.3d 1107, 1118-1119 (6th

Cir.1996). This court has also stated that when some time has elapsed between the protected activity and the adverse employment action, the employee must produce additional evidence of retaliatory conduct. *Meyers* at ¶ 29. Additional evidence may include punitive actions taken, such as bad performance reports, changes in salary level, hostile attitudes, or evidence that the employer treated the employee differently from other employees. *Dover v. Carmeuse Natural Chems.*, 5th Dist. Perry No. 10-CA-8, 2010-Ohio-5657, ¶ 47.

{¶25} In her prima facie case, appellant did not point to additional evidence of retaliatory conduct after her report of the bed-rail incident;[3] rather, appellant relies primarily on the temporal proximity — she was discharged six weeks after she reported the incident.

{¶26} On appeal, appellant also argues that only two weeks lapsed between her October 17, 2012 telephone call to ODH and her discharge on November 2, 2012. This argument lacks merit. While a plaintiff may create an inference of causation through the employer's knowledge of the protected activity coupled with a closeness in time, appellant did not produce evidence to show that MetroHealth was aware of her telephone report to the ODH.[4] Absent knowledge of appellant's report to the state, an inference of

---

[3]In her reply brief, appellant characterizes the disciplinary actions in 2009 to 2012 against her as a pattern of retaliatory conduct, but these alleged retaliatory conduct acts were *prior to* her report of the alleged abuse incident and therefore cannot be used to help establish a direct, causal link between her report and her discharge — the employer could not possibly retaliate against appellant's report of abuse by past disciplinary actions.

[4]In her deposition on November 25, 2013, when asked if the management was aware of her

causal link between her report to the state and her termination cannot be established. *Arsham-Brenner v. Grande Point Health Care Community*, 8th Dist. Cuyahoga No. 74835, 2000 Ohio App. LEXIS 3164, 17-18 (July 13, 2000) (without evidence showing the defendant hospital was aware of appellant's statements to the ODH prior to her termination, appellant's evidence does not establish any factual dispute to show that her statements to the ODH caused the appellees to retaliate against her).

**{¶27}** Based on the facts of this case, where there was a six-week lapse and there was no additional evidence of retaliatory conduct by the employer, the trial court properly determined that no genuine issue of material fact remained regarding appellant's inability to establish a prima facie case for retaliation under R.C. 3721.24.

**{¶28}** Appellant asks us to apply *Dover*, 5th Dist. Perry No. 10-CA-8, 2010-Ohio-5657, where the Fifth District determined that an employee's termination two and one-half months after he filed a workers' compensation claim was "minimal circumstantial evidence" sufficient to establish a causal link. Even assuming arguendo that the interval of six weeks by itself without more evidence of retaliatory conduct established a sufficient causal link for appellant's prima facie case of retaliation, her claim of retaliatory discharge would still fail, because MetroHealth offered legitimate reasons for appellant's discharge.

**Legitimate Reason for Appellant's Discharge**

---

report to ODH, appellant answered "I have my suspicion," without pointing to any evidence of Metro's knowledge.

**{¶29}** MetroHealth cited legitimate reasons for the termination of appellant's employment: her extensive history of disciplinary issues before she engaged in the protected activity and her inappropriate conduct after the bed-rail incident. Specifically, the action report for her discharge stated she was discharged for (1) creating a hostile work environment, (2) disruption of business created through a refusal to follow procedures, and (3) repeated grossly inappropriate behaviors. The report noted that after the incident, there were staff complaints of appellant's challenging them as to their statements regarding the incident and the timeliness of their statements. Furthermore, even after she was informed that the state had already been made aware of her allegation of abuse and was investigating it, appellant still publicly "lashed out" at the administration and continually challenged the administration's handling of the incident. She interrupted one of the meetings and accused the administration of failing to properly investigate her allegation and at another meeting she abruptly left without signing a required acknowledgment of the meeting. The report noted appellant's behaviors were part of an ongoing pattern of conduct for which she had been previously disciplined.

**{¶30}** Once the employer provides legitimate reasons for the adverse action, the burden shifts to the employee to show that the employer's articulated reasons were pretextual. *Dolan* at ¶ 20. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v.*

*A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). *See also Rice v. Cuyahoga Cty. DOJ*, 2005-Ohio-5337, 970 N.E.2d 470, ¶ 43 (8th Dist.). Appellant argues MetroHealth's termination of her was actually motivated by retaliation, not by the stated reasons of past and ongoing inappropriate conduct and disciplinary issues. However, in our view, appellant has failed to come forward with sufficient evidence from which a jury could reasonably reject MetroHealth's stated reasons for her termination. Her subjective belief was insufficient to meet her burden of showing the stated reasons were pretextual. *Hollowell v. Soc. Bank & Trust*, 78 Ohio App.3d 574, 580-581, 605 N.E.2d 954 (6th Dist.1992).

{¶31} Appellant failed to create a triable issue that her discharge was retaliatory in violation of R.C. 3721.24. The trial court properly granted summary judgment on that claim. The first assignment of error is without merit.

**Whistleblower Retaliation Claim Under R.C. 4113.52**

{¶32} The second and third assignments of error concern appellant's whistleblower retaliation claim under R.C. 4113.52. We address them together. Ohio's Whistleblower Statute, R.C. 4113.52 ("Right of employee to report violation of law by employer or fellow employee"), states:

> If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation

is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, * * *, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, * * *, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged. R.C. 4113.52(A)(1)(a).

{¶33} The statute "protects employees from retaliation for notifying the proper authorities of illegal, dangerous conditions that the employer allows to exist." *Smith v. Children's Aid Soc.*, 8th Dist. Cuyahoga No. 86644, 2006-Ohio-4754. The statute protects an employee who meets the requirement as a whistleblower from retaliatory action by the employer. R.C. 4113.52(B). The Whistleblower Statute, however,

contemplates that the employer is given the opportunity to correct the alleged violation. *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 249, 652 N.E.2d 940 (1995).

**{¶34}** Moreover, "[i]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras* at syllabus. Where an employee reasonably believes a violation of a statute or regulation is a criminal offense likely to cause an imminent risk of physical harm, R.C. 4113.52 will provide protection as a whistleblower if the employee first orally notified his or her supervisor and subsequently filed with the supervisor a written report with "sufficient detail to identify and describe the violation" yet the employer fails to make a reasonable good faith effort to correct the violation within 24 hours after the oral notification or receipt of the written report, whichever is earlier. *Contreras* at 246-248.

**{¶35}** Therefore, in order to make out her prima facie case under the Whistleblower Statute, appellant must present evidence to show that she reasonably believed the aide's handling of the patient (pulling up all four bed rails) was a violation that constituted "a criminal offense that is likely to cause an imminent risk of physical harm to persons" and, after she orally notified her supervisor of the violation and filed a written report that provided "sufficient detail to identify and describe the violation," MetroHealth did not correct the alleged violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after her notification. *Contreras* at 246-248.

**{¶36}** Appellant fails to produce evidence to make out a prima facie case under the Whistleblower Statute. Even if appellant reasonably believed the aide's pulling up all four bed rails was a violation constituting a criminal offense that was likely to cause an imminent risk of physical harm to the resident, the violation was immediately corrected. The aide was instructed her conduct was improper. There was no evidence that the aide's conduct was condoned by MetroHealth — the aide received disciplinary action for her handling of the resident and the staff received retraining on dealing with residents with behavioral difficulties and on reporting suspected abuse. In addition, as ODH found, the management notified the state within the required time frame. Furthermore, appellant did not show she satisfied the requirement of filing a written report with "sufficient detail to identify and describe the violation." Her written statement described the aide's pulling up all four bed rails as abuse but did not identify the law or regulation violated, and as such, did not satisfy the statutory requirement to trigger whistleblower protection under the statute. *Blackburn v. Am. Dental Ctrs.*, 10th Dist. Franklin No. 10AP-958, 2011-Ohio-5971, ¶14 (employee seeking whistleblower protection failed to provide sufficient detail and describe the violation of law in her written report that alleged merely "unprofessional" and "unethical" conduct). Appellant failed to produce evidence to create a genuine issue of material of fact regarding her prima facie case for whistleblower retaliation under R.C. 4113.52. The second and third assignments of error are without merit.

**Intentional Infliction of Emotional Distress**

{¶37} The bar is high for proof of a claim of intentional infliction of emotional distress. The elements of the claim are:

> "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community, Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j. * * *"

*Tschantz v. Ferguson*, 97 Ohio App.3d 693, 702, 647 N.E.2d 507 (8th Dist.1994), quoting *Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (8th Dist.1983). In the employment context, the bar is even higher. It is "incumbent upon an employee claiming intentional infliction of emotional distress to produce evidence that his termination was the result of a course of extreme and outrageous conduct on the part of the employer and not the result of the employer's insistence upon his legal rights in a permissible way." *Vitanza v. First Natl. Supermarkets, Inc.*, 8th Dist. Cuyahoga No. 62906, 1993 Ohio App. LEXIS 3213, 24 (June 24, 1993).

{¶38} Appellant produced a letter from her primary treating physician, which stated that her ongoing emotional distress and mental health conditions were a direct result of her abrupt termination from MetroHealth. She also produced a letter from her counselor, who also attributed her emotional distress to her termination from MetroHealth.

**{¶39}** Even assuming that a causal relationship has been established by these letters, the evidence did not create a genuine issue of material fact that MetroHealth's conduct in this case was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community. MetroHealth and appellant did not agree on the how the bed-rail incident should be handled, but there was no evidence showing MetroHealth's conduct was "extreme and outrageous" or "beyond all possible bounds of decency." The fourth assignment of error is without merit.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MELODY J. STEWART, J., and
ANITA LASTER MAYS, J., CONCUR