ANDERSON, Appellant,

v.

WELLMAN PRODUCTS GROUP, Appellee.

[Cite as *Anderson v. Wellman Products Group*, 157 Ohio App.3d 565, 2004-Ohio-3420.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 03CA0084–M.

Decided June 30, 2004.

Michael Terrence Conway, for appellant.

Alan M. Rauss and Steven R. Malynn, for appellee.

CARR, Presiding Judge.

{¶ 1} Appellant, Pamela Anderson, appeals from the judgment of the Medina County Court of Common Pleas, which granted summary judgment in favor of appellee, Wellman Products Group. This court affirms.

I

{¶ 2} Appellant began her employment with appellee in April 1999. In October 2000, appellant was injured in an automobile accident. Appellant requested to take medical leave under the Family and Medical Leave Act ("FMLA"), and appellee granted it. Appellant took FMLA-qualifying leave from October 2000 to January 2001. She returned to work in early January, and four months later, on May 2, 2001, appellant experienced shoulder and neck pain and numbness in her arm while operating a machine press during her work shift. Appellant informed her shift supervisor of the problem, and he moved her to a different machine to work. Appellant still experienced pain and informed her shift supervisor that she had to take off the rest of her shift and that she was going to see her doctor.

{¶ 3} As part of its company policies, appellee implemented progressive disciplinary procedures with its employees known as the Corrective Action Program. This program involved four steps of discipline for company employees who violated work policies, the final step being termination by appellee. All employees were provided with a company manual that explained its policies, including the Corrective Action Program. Appellant had received several write-ups under this program during her employment with appellee. In April 2001, appellant was warned that her next write-up could result in her termination. On May 3, 2001, appellant received a write-up for mistakes made during her work-shift on May 2, 2001. Because the write-up put appellant into the fourth step of the corrective action program, appellee told its Human Resources Director, Kyra Baumer/Gobora, that appellant was to be terminated on May 3, 2001.

{¶ 4} Appellant did not come in to work her shift on May 3, 2001. Instead, appellant telephoned Baumer/Gobora and told her that she had seen her doctor and that she needed to take more FMLA leave. Baumer/Gobora did not tell appellant at that time that she would be terminated; she provided appellant with medical paperwork and instructed her to call in once a week to report her medical status. Because appellant did not return to work for the next several weeks, Baumer/Gobora sent her a termination letter via certified mail on May 25, 2001.

{¶ 5} Appellant did not contact appellee after she received her termination letter but instead filed suit against appellee for violation of the FMLA in April 2002. Appellee filed its answer, and the parties conducted discovery for the case. On February 14, 2003, appellee filed a motion for summary judgment and appellant filed a motion in opposition to summary judgment on April 21, 2003. After consideration of the parties' briefs and attached exhibits and evidence, the trial court granted summary judgment to appellee and journalized the judgment on June 11, 2003.

{¶ 6} Appellant timely appealed from the decision, setting forth three assignments of error for review. As all three of appellant's assignments of error allege that the trial court erred in granting summary judgment to appellee for various reasons, this court will address them together for ease of discussion.

## II

### FIRST ASSIGNMENT OF ERROR

"The trial court prejudicially erred when it dismissed the plaintiff's FMLA case based upon the defendant's motion for summary judgment finding that the plaintiff is not protected under the FMLA."

### SECOND ASSIGNMENT OF ERROR

"The trial court prejudicially erred when it dismissed the plaintiff's FMLA case upon the defendant's motion for summary judgment finding that the doctrine of promissory estoppel did not create a right to increased FMLA entitlements in the case *sub judice*."

### THIRD ASSIGNMENT OF ERROR

"The trial court prejudicially erred when it dismissed the plaintiff's FMLA case upon the defendant's motion for summary judgment as the court's finding of facts demonstrate the presence of an FMLA violation on the part of the defendant employer."

{¶ 7} In her first assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee by finding that appellant was not protected under the FMLA. In her second assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee by finding that appellant was seeking relief under the doctrine of promissory estoppel. In her third assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee because the court's findings of fact demonstrate that appellee violated the FMLA. This court disagrees.

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 9} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material showing that a genuine dispute over material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 10} In the instant case, the parties dispute the applicability of the FMLA with regard to appellant's termination. This court has stated:

"The FMLA entitles an eligible employee to twelve work weeks of unpaid leave during any twelve-month period for [among other reasons] a serious health condition that causes the employee to be unable to perform her job responsibilities and functions. Section 2612(a)(1)(D), Title 29, U.S.Code; *Ragsdale v. Wolverine World Wide, Inc.* (2002), 535 U.S. 81, 86, 122 S.Ct. 1155, 152 L.Ed.2d 167. The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of the employee's rights under the act. Section 2615(a)(1), Title 29, U.S.Code. If an employer interferes with the employee's right to leave, the deprivation of the right is a violation of the FMLA, regardless of the employer's intent. *Smith v. Diffee Ford–Lincoln–Mercury, Inc.* (C.A.10, 2002), 298 F.3d 955, 960. 'When an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave. In such cases, the intent of the employer is immaterial.' *King v. Preferred Technical Group* (C.A.7, 1999), 166 F.3d 887, 891. *Cavin v. Honda of Am. Mfg., Inc.* (S.D.Ohio Feb. 22, 2002), No. 02–00–400 [2002 WL 484521], 2002 U.S. Dist. LEXIS 19601." *Jarvis v. Gerstenslager Co.*, 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, 2003 WL 21398473, at ¶ 16.

{¶ 11} The United States Court of Appeals for the Sixth Circuit has stated that in order for an employee to prevail on an interference claim under the FMLA, the employee must establish that "(1) [she] is an 'eligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an 'employer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of [her] intention to take leave, 29 U.S.C.

§ 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which [she] was entitled. See *Price v. Multnomah County,* 132 F.Supp.2d 1290, 1297 (D.Or.2001); see generally *Arban v. West Publ'g Corp.,* Nos. 01–2278/2370, 345 F.3d 390, 2003 U.S.App. LEXIS 19658, 2003 WL 22189281, at * 7–8 [6th Cir. Sept. 24, 2003]." *Cavin v. Honda of Am. Mfg.* (C.A.6, 2003), 346 F.3d 713, 719.

{¶ 12} In its motion for summary judgment, appellee argued that appellant failed to establish a prima facie case of interference against it. Appellee also asserted that appellant failed to show that her attempt to apply for FMLA leave was a determining factor in appellee's decision to terminate her employment. In addition, appellee argued that it had articulated a legitimate, nonretaliatory reason for appellant's termination and that appellant provided no evidence that such reason was pretextual under the facts of the case.[1] This court will focus on appellee's argument that it was entitled to summary judgment because appellant did not establish a prima facie case that appellee interfered with her right to medical leave under the FMLA, as it is the dispositive issue in this case.

{¶ 13} Appellee specifically argued that appellant was not entitled to FMLA leave at the time she was terminated because she had exhausted her 12 weeks of FMLA leave just four months before her termination. Appellee explained that appellant received her FMLA-required 12 weeks of leave from October 6, 2000, through January 2, 2001, and was terminated in May 2001. Therefore, appellant was not entitled to any additional FMLA leave that appellee could deny her the right to take by terminating her employment; appellant cannot state a claim under the FMLA because she simply cannot establish that she was entitled to such leave.

{¶ 14} In support of this argument, appellee presented documents that included its Family and Medical leave of absence forms and excerpts of its employee handbook that covered appellee's Corrective Action Program and its procedures with regard to providing FMLA leave to employees. The employee handbook, with regard to these two sections, explained in detail both (1) the progressive stages of its disciplinary process for employees, leading up to termination, and (2) appellee's explanation that it does not grant any more FMLA-qualified leave time than the required 12–week amount under the FMLA. Under the "Terms and Conditions" section of appellee's Family and Medical leave of absence forms, it states that an employee's FMLA-qualifying leave time for any one-year period pursuant to the act begins the day the employee begins his or her approved leave. Appellee also presented a copy of its "Receipt and Acknowledgment Form" that

---

1. Although appellee fashions its arguments using the *McDonnell–Douglas* test for retaliation claims, this court does not find that test applicable here; therefore, we will not use it in our analysis of the law and facts in this case.

appellant signed, which states that she received her employee handbook and that she understands both appellee's personnel policies and practices therein and appellant's obligations as an employee of the company. Appellee provided paperwork from appellant's personnel file, showing numerous disciplinary write-ups she had received while working at the company.

{¶ 15} In addition, appellee provided excerpts of appellant's deposition testimony in which she acknowledged that appellee granted her FMLA leave from October 2000 until January 2001, and that during that time period she received compensation from appellee's short-term disability insurance policy. Last, appellee referred directly to the language of the FMLA itself and provided applicable case law, including *Covucci v. Serv. Merchandise Co., Inc.* (C.A.6, 1999), 178 F.3d 1294, in which the United States Court of Appeals for the Sixth Circuit held that an employer was properly granted summary judgment as to the employee's FMLA claim because the employee was not denied any of the substantive rights promised by the FMLA where he had already exhausted his FMLA-qualifying leave time with the employer that year, took more time off, and was later terminated by his employer.

{¶ 16} Appellee attached the above evidentiary material to its motion to show the following: appellee had granted appellant FMLA leave, appellant had exhausted her 12 weeks of FMLA-qualifying leave during the time period from October 2000 until January 2001, and, consequently, she was not entitled to FMLA leave in May 2001 when she took additional time off from work. Moreover, appellee referred to the above evidence to show that appellant failed to establish a prima facie case of interference under the FMLA against it, as no genuine issue remained as to the fact that appellant was not entitled to leave under the FMLA and, therefore, appellee did not deny her that right when it terminated her for disciplinary reasons. This court finds that appellee satisfied its *Dresher* burden and, as a result, the burden shifts to appellant to satisfy the burden in order to overcome summary judgment against her. Civ.R. 56(E).

{¶ 17} In her motion in opposition to summary judgment, appellant argued that appellee interfered with her right to medical leave under the FMLA when it terminated appellant while she was out on what she alleges was FMLA-qualifying leave. Appellant further argued that appellee was estopped from asserting that she had exhausted her FMLA leave and therefore was not eligible for FMLA leave at the time she took off work because appellee's Human Resources Director, Kyra Baumer/Gobora, led appellant to believe that she was entitled to FMLA leave at that time. Appellant referred to her own deposition and Baumer/Gobora's deposition to support this argument.

{¶ 18} This court recognizes that nothing prevents it from exercising its equitable powers to estop a party from raising a particular claim or defense.

"The doctrine of equitable estoppel is a judicial doctrine of equity which operates apart from any underlying statutory scheme. If all the elements of equitable estoppel are met, an employer may be estopped from challenging an employee's eligibility as a result of the employer's misconduct * * * ." *Kosakow v. New Rochelle Radiology Assoc., P.C.* (C.A.2, 2001), 274 F.3d 706, 724. However, after reviewing the record in the instant case, this court agrees with the trial court that Baumer/Gobora's testimony regarding her representations to appellant in May 2001 were ambiguous at best. Although Baumer/Gobora denied in both her affidavit and deposition testimony that appellant was granted FMLA leave, she also admitted that she never told appellant that she was not entitled to additional FMLA leave and that Baumer/Gobora instructed her to call in once a week to report her medical status. Appellant claimed in her testimony that Baumer/Gobora gave her the impression that she was on additional FMLA leave.

{¶ 19} There can be little doubt that appellant has raised a genuine issue of fact with respect to whether she was on FMLA leave in May 2001. However, whether appellant was on FMLA leave or not, appellee still had the right to discharge her if it did not interfere with her FMLA benefits. The FMLA does not provide a private right of action for any employee, only for employees entitled to such leave pursuant to Section 2612(a)(1), Title 29, U.S.Code. The evidence that appellant had exhausted her 12 weeks of FMLA leave in January 2001 was undisputed in this case. Moreover, the United States Court of Appeals for the Tenth Circuit has held that if an employee's discharge would have occurred regardless of her request for FMLA leave, then that employee may be discharged even if discharge prevents her exercise of any possible right to FMLA leave. *Bones v. Honeywell Internatl., Inc.* (C.A.10, 2004), 366 F.3d 869, 877.

{¶ 20} Even if this court were to assume that appellant had established her entitlement to FMLA leave, this court finds that her interference claim still fails because appellee successfully established that appellant would have been discharged regardless of her request for FMLA leave. Appellee provided evidence that appellant had been discharged for disciplinary reasons. It provided evidence of its "Corrective Action Program," which involved the following four progressive disciplinary steps its takes with its employees: (1) verbal counseling, (2) verbal counseling and a written warning, (3) final written warning, and (4) termination. Appellee also provided evidence that appellant had received several write-ups under this program in the time period between March 2000 and April 2001 concerning her work performance and her behavior at work. The evidence further demonstrated that appellant was told in April 2001 that another write-up could result in her termination, and her work performance on May 2, 2001, resulted in another write-up and subsequently her termination. Appellant did

not provide evidence to dispute she had received these write-ups or to establish she had not been discharged for disciplinary reasons.

{¶ 21} The United States Court of Appeals for the Tenth Circuit has stated:

"A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory. *Diffee Ford–Lincoln–Mercury*, 298 F.3d at 961 (an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998) (to withstand summary judgment on an interference theory, an employee's termination must have been related to her request for an FMLA leave)." *Bones v. Honeywell Internatl., Inc.*, 366 F.3d at 878–879.

{¶ 22} Appellee presented evidence that it discharged appellant, pursuant to its corrective action program policy, because she received numerous write-ups and a warning that her termination was imminent due to her work performance and behavior at work; the uncontroverted evidence was that she would have been terminated pursuant to the company's disciplinary policy irrespective of whether or not she requested medical leave. See *McBride v. CITGO Petroleum Corp.* (C.A.10, 2002), 281 F.3d 1099, 1108 (no interference if the employee would have been terminated in the absence of the FMLA request or leave). Appellant's request for FMLA leave does not exempt her from following company policies just like any other employee; nor does it shield her from any disciplinary action appellee takes against her because she has not complied with those company policies. See *Diffee Ford–Lincoln–Mercury*, 298 F.3d at 960 (an employee who requests an FMLA leave has no greater rights than an employee who does not request such leave).

{¶ 23} In light of the above facts and the applicable law, this court finds that summary judgment was properly granted in favor of appellee, albeit for different reasons than those given by the trial court. Appellant's three assignments of error are overruled.

## III

{¶ 24} Accordingly, the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

SLABY, J., concurs in judgment only.

BAIRD, J., dissents.

SLABY, Judge, concurring in judgment only.

{¶ 25} The majority points out that it is uncontested that the appellant had exhausted her FMLA leave. The appellant argues with self-serving statements that she believed from statements made to her that she had more leave coming. I believe that issue is, was the appellant legally entitled to the additional leave? The uncontested answer to that question is no.