[Cite as *Hartman v. Ohio Dept. of Transp.*, 2016-Ohio-1254.]

| | |
|---|---|
| FRED HARTMAN | Case No. 2014-00790 |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Anderson M. Renick |
| v. | |
| | <u>DECISION</u> |
| OHIO DEPARTMENT OF<br>TRANSPORTATION | |
| Defendant | |

{¶1} On December 9, 2015, defendant, the Ohio Department of Transportation (ODOT), filed a motion for summary judgment pursuant to Civ.R. 56(B). On December 31, 2015, plaintiff filed a response. On January 15, 2016, defendant filed a reply and a motion to file the same, which is hereby GRANTED. The motion for summary judgment is now before the court for a non-oral hearing.

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶4} On November 4, 1991, plaintiff began working for ODOT as a highway maintenance worker. In 2011 and 2012, plaintiff's job classification was Highway Technician 1, a bargaining unit position which is subject to a collective bargaining agreement (CBA). During the period in question, plaintiff was involved in a series of incidents which resulted in progressive discipline being imposed in accordance with the CBA.

{¶5} On or about November 17, 2011, two ODOT employees reported that plaintiff had two cans of beer in his locker at work. According to plaintiff, he had inadvertently left the beer in a bag he used for lunch. As a result of the incident, plaintiff was directed to submit to a drug test and he subsequently received a three-day disciplinary suspension.

{¶6} Plaintiff testified that, since 2001, he had received intermittent treatment from a psychiatrist for anxiety and that his anxiety symptoms returned after being disciplined. In December 2011, plaintiff submitted a letter from his psychiatrist, stating that plaintiff was experiencing stress and anxiety, and requesting help to "find some resolution." (Plaintiff's deposition, Exhibit H.) On January 9, 2012, plaintiff's physician, Joseph Moravec, M.D., wrote a letter stating that plaintiff had suffered hearing loss in his right ear and that he should wear appropriate hearing protection. (Plaintiff's deposition, Exhibit I.)

{¶7} On January 11, 2012, plaintiff was operating an ODOT truck when the vehicle struck a sign while backing up. According to the accident report, the collision "ripped off the smoke stack" from the truck. (Plaintiff's deposition, Exhibit A.) Although plaintiff testified during his deposition that another employee was supposed to warn him with a horn before he backed into the sign, he stated that he did not report that information to anyone after the accident. The incident worksheet shows that the accident was characterized as preventable and plaintiff was issued a written reprimand. *Id.*

{¶8} On January 20, 2012, plaintiff was involved in another vehicle accident that occurred while he was operating a dump truck. According to plaintiff's statement in the accident report, plaintiff was backing an "arrowboard" into a parking space when the arrowboard struck a trailer that was located in an adjacent parking space, damaging the arrowboard. (Plaintiff's deposition, Exhibit B.) On February 9, 2012, plaintiff was driving a tandem dump truck when the truck struck the concrete wall of a salt dome as plaintiff was backing the truck toward the entrance of the structure. (Plaintiff's deposition, Exhibit C.) Plaintiff testified that he was backing up to unload salt and that he failed to look at the right rear side of the truck before he backed into the wall. (Plaintiff's deposition, page 30.) Both the truck and the concrete wall were damaged as a result of the accident.

{¶9} After the three accidents in early 2012, plaintiff learned that Jim Fife, the business and human resources director for ODOT's District 8, had become concerned about plaintiff's ability to perform driving duties. (Plaintiff's deposition, page 37.) According to plaintiff, Fife suggested that he should retire. Plaintiff testified that he had a "fantastic" relationship with his direct supervisor, Barbara Taylor, and that sometime in late 2011 or early 2012, he informed her that he had recently developed some hearing loss in his right ear. (Plaintiff's deposition, pages 19-22.) Plaintiff testified that he began wearing a hearing aid in late 2011 or early 2012. On February 21, 2012, Dr. Moravec sent a letter to Taylor, wherein he stated that plaintiff had attributed the three accidents to hearing loss in his right ear. (Plaintiff's deposition, Exhibit J.)

{¶10} ODOT conducted a review of the January 20, 2012 and February 9, 2012 accidents and determined that both incidents were preventable, improper backing accidents. As a result of ODOT's investigation, on February 24, 2012, plaintiff was issued a five-day suspension as combined discipline for both accidents. (Plaintiff's deposition, Exhibit C.) Plaintiff did not appeal the disciplinary action. (Plaintiff's deposition, Exhibit K.)

**{¶11}** After the suspension, plaintiff was temporarily relieved from driving duties and he was referred for an independent medical examination. Jeffrey Davin, M.D., examined plaintiff on April 4, 2012, and on the same date, he issued a detailed medical report which discussed plaintiff's physical capability to perform his job duties. (Plaintiff's deposition, Exhibit D.) Regarding plaintiff's hearing, Dr. Davin noted that without a hearing aid, plaintiff had moderate to severe hearing loss on the right side; however, he was unable to test plaintiff's hearing capabilities with the hearing aid in place. Dr. Davin explained that plaintiff's hearing in his left ear met the federal transportation and highway safety hearing requirements. According to Dr. Davin, plaintiff had adequate vision and range of motion to operate a motor vehicle. Dr. Davin did "not find any medical reason that would interfere with [plaintiff's] capabilities of backing a vehicle safely" and he believed that plaintiff's hearing loss did not "come into play during a backing maneuver."

**{¶12}** Dr. Davin specifically recommended an evaluation of plaintiff's "job skill capabilities of adequately backing a truck or a truck-trailer unit to avoid further accidents." Additionally, Dr. Davin found no medical reason why plaintiff was not fit to participate in snow removal activities. However, Dr. Davin recommended a "functional capacity evaluation" to assess plaintiff's ability to perform ODOT's physical requirement of lifting 50-100 pounds and activities which require a great deal of walking, climbing, bending, or stooping. Within several weeks after Dr. Davin issued his report, plaintiff was permitted to return to driving duties.

**{¶13}** On June 19, 2012, plaintiff was given a pothole patching assignment. Plaintiff contends that he was not feeling well that day and that he decided to go home. According to plaintiff, another employee agreed to perform the job. Plaintiff admitted that he should have informed Taylor that he was going home, but he did not. Plaintiff testified that a coworker, Pam Rizor, wrote a statement about the incident and, after

some investigation including witness statements, a hearing was held. (Plaintiff's deposition, pages 64-67.)

{¶14} On June 20, 2012, plaintiff attempted to file a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). (Plaintiff's affidavit, Exhibit 2.) Plaintiff ultimately filed his charge alleging age and disability discrimination with the EEOC on July 2, 2012.

{¶15} On July 19, 2012, following a pre-disciplinary hearing, both plaintiff and his union representative signed a "last chance agreement" and accepted a five-day suspension. (Plaintiff's affidavit, Exhibit 5.) According to the agreement, plaintiff was subject to termination for any violation of work rules within a two-year period of the date of the agreement.

{¶16} On July 18, 2012, plaintiff submitted an FMLA request for intermittent leave ("from time to time"). (Plaintiff's affidavit, Exhibit 6.) On August 13, 2012, plaintiff filed an FMLA health care provider certification from his physician. (Plaintiff's affidavit, Exhibit 8.)

{¶17} Also on August 13, 2012, plaintiff used a tractor to mow along State Route 126. Plaintiff attempted to cross the road from the right shoulder to the center median when the machinery he was operating was struck by a vehicle on the highway. The driver of the vehicle was transported to a hospital for treatment and the heavily damaged vehicle was towed from the scene of the accident. Plaintiff was given a citation by the Springfield Township Police for "failure to yield" which he did not contest. ODOT conducted an accident review. (Plaintiff's deposition, Exhibit E.)

{¶18} The next day, on August 14, 2012, plaintiff received a notice of a pre-disciplinary hearing that was scheduled for August 17, 2012. *Id.* Counsel for plaintiff attended the hearing, which was continued to allow plaintiff to present additional evidence.

{¶19} On August 30, 2012, plaintiff's treating psychiatrist, Cyma Khally, M.D., wrote a letter stating that plaintiff should take FMLA leave from August 30, 2012 until September 20, 2012. (Plaintiff's affidavit, Exhibit 10.) On September 17, 2012, Dr. Khally recommended that plaintiff's FMLA leave should be extended until October 22, 2012. (Plaintiff's affidavit, Exhibit 11.) On September 18, 2012, plaintiff was informed by the Ohio Department of Administrative Services (DAS), that he had been approved for disability leave benefits for the period September 12, 2012 through September 16, 2012. (Plaintiff's affidavit, Exhibit 12.) On October 2, 2012, ODOT's director sent plaintiff a letter informing him that his employment would be terminated effective October 5, 2012, based upon a violation of the July 19, 2012 last chance agreement. (Plaintiff's affidavit, Exhibit 13.)

{¶20} Plaintiff brought this action alleging disability discrimination and retaliation pursuant to R.C. 411.02, and violation of his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. 2611 et seq. Defendant argues that plaintiff cannot prevail on his claims because the recommendation to terminate his employment was not related either to his purported disability or to his requests to take FMLA leave. Defendant further contends that plaintiff cannot show that defendant's legitimate, non-discriminatory reason for imposing discipline and subsequently terminating his employment was pretext for retaliation or disability discrimination.

{¶21} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. * * * Discriminatory intent may be proven by either direct or indirect evidence." *Hardgrow v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-919, 2012-Ohio-2731, ¶ 18. In this case, plaintiff does not appear to suggest that there is direct evidence of discriminatory intent. Absent direct evidence, Ohio courts resolve claims of employment discrimination using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973). *Canady v. Rekau & Rekau, Inc.*, 10th Franklin Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 22.

**FMLA**

{¶22} The FMLA prohibits employers from discriminating against employees for exercising their rights under the Act. Section 2615(a)(2). "Basing an adverse employment action on an employee's use of leave or retaliation for exercise of FMLA rights is therefore actionable." *Ressler v. AG*, 10th Dist. Franklin No. 14AP-519, 2015-Ohio-777, ¶ 14, citing *Skrjanc v. Great Lakes Power Serv. Co.* (C.A.6, 2001), 272 F.3d 309. An employee can prove FMLA retaliation circumstantially, using the method of proof established in *McDonnell Douglas Corp. v. Green, supra*. *Id*. "To establish a prima facie case of retaliation circumstantially, a plaintiff must show that: (1) [he] exercised rights afforded by FMLA, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between [his] exercise of rights and the adverse employment action." *Ressler* at ¶ 14, citing *Zechar v. Ohio Dept. of Edn.*, 121 Ohio Misc.2d 52, 2002-Ohio-6873, ¶ 9.

{¶23} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas, supra*, at 802. If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision. *Id*.

{¶24} There is no dispute that plaintiff exercised his rights under the FMLA and that his termination was an adverse employment action. However, defendant argues that there was no causal connection between any protected FMLA activity and any adverse employment action.

{¶25} If an adverse action was considered *before* plaintiff engaged in protected activity, there is no inference of causation. *See Prebilich-Holland v. Gaylord*

*Entertainment Co.,* 297 F.3d 438, 443-444 (6th Cir. 2002) (finding that close proximity creates no inference of causation when the termination procedure was instituted several days before knowledge of protected status or activity). "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Sosby v. Miller Brewing Co.,* 415 F. Supp. 2d 809, 822 (S.D. Ohio 2005), citing *Smith v. Alien Health Sys., Inc.,* 302 F.3d 827, 834 (8th Cir. 2002).

**{¶26}** Inasmuch as plaintiff entered into the last chance agreement with defendant on July 19, 2012, as a result of incidents that occurred well before he first submitted his July 18, 2012 FMLA leave request, there is no inference of causation. Furthermore, "'[a] reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory * * * an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery.'" *Anderson v. Wellman Prods. Group* (2004), 157 Ohio App. 3d 565, 573. "[I]f an employee's discharge would have occurred regardless of [his] request for FMLA leave, then that employee may be discharged even if discharge prevents [his] exercise of any possible right to FMLA leave." *Id.* at 572.

**{¶27}** When plaintiff signed the agreement, he understood that any violation of work rules could result in termination of his employment. Defendant held a pre-disciplinary hearing and ultimately terminated his employment as a result of the August 13, 2012 motor vehicle accident. Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that there was no causal connection between plaintiff's FMLA request and the decision to terminate his employment based upon a violation of the last chance agreement.

**{¶28}** Even if plaintiff had established a prima facie case of retaliation, he could not prevail if defendant had legitimate, nondiscriminatory reasons for terminating his employment. *McDonnell Douglas, supra.* It is undisputed that plaintiff had been

disciplined for at least four incidents prior to entering into a last chance agreement: taking beer to work and three preventable vehicle accidents.  Plaintiff was involved in a serious injury accident while operating a tractor on August 13, 2012, a clear violation of the last chance agreement.  Based upon the undisputed evidence and the applicable law, the court finds that defendant had legitimate, nondiscriminatory reasons for terminating plaintiff's position.  Accordingly, defendant is entitled to judgment as a matter of law as to plaintiff's FMLA claim.

**Disability Discrimination**

{¶29} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of an employee's disability, to refuse to hire or otherwise to discriminate against that person.  *Ressler, supra*, at ¶ 16. In order to establish a prima facie case of disability discrimination, plaintiff must demonstrate that: 1) he was disabled, 2) an adverse employment action was taken by an employer, at least in part, because of his disability, and 3) although disabled, plaintiff can safely and substantially perform the essential functions of the job in question.  *Id.*, citing *Debolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, ¶ 39, 2001-Ohio-3996 (10th Dist.2001); *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571, 1998-Ohio-410 (1998).  The *McDonnell Douglas* burden shifting framework also applies for the analysis of plaintiff's claim of disability discrimination under R.C. Chapter 4112.  *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, 178 (2004); *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011 Ohio 6054.

{¶30} With regard to the second element, although plaintiff testified that he told Taylor he had some hearing loss in either late 2011 or early 2012, he did not make ODOT aware of any concern about hearing loss affecting his ability to operate equipment and motor vehicles in response to the incidents which resulted in the last chance agreement.  The court finds that Dr. Moravec's February 21, 2012 letter, which

was written after the first three accidents and for the first time suggested that plaintiff believed his hearing loss was related to the accidents, does not create an issue of fact regarding whether ODOT's decisions to discipline plaintiff and enter into a last chance agreement were related to plaintiff's disability.  Dr. Moravec did not state that plaintiff either needed or requested an accommodation to operate equipment or motor vehicles.

{¶31} Furthermore, plaintiff admitted that the August 2012 accident which resulted in a violation of the last chance agreement and, ultimately, his termination, was not attributable to hearing loss or any other health concern.  (Plaintiff's deposition, page 63-64.)  Therefore, the court finds that the undisputed evidence shows that plaintiff cannot establish that the disciplinary actions were taken by ODOT, at least in part, because of any disability.  Accordingly, plaintiff cannot establish a prima facie case of disability discrimination.

{¶32} However, even assuming arguendo that plaintiff established a prima facie case for his disability discrimination claim, the court finds that ODOT had legitimate, non-discriminatory reasons for imposing discipline which led to terminating his employment.

{¶33} After the three accidents which resulted in the last chance agreement, ODOT temporarily removed plaintiff from driving assignments and referred him for an independent medical examination.  As discussed above, Dr. Davin examined plaintiff and assessed his ability to operate motor vehicles and perform other duties related to his employment.  Dr. Davin found no medical reason to support plaintiff's contention that hearing loss had "come into play" during the backing accidents.  Thereafter, plaintiff was returned to driving duties and he testified that he believed he was "fine to drive" after he began to use his hearing aid.  (Plaintiff's deposition, page 63.)  Plaintiff's August 13, 2012 injury accident was not attributable to his hearing loss.  However, the accident was a violation of the last chance agreement he had voluntarily entered into, resulting in his termination.  Based upon the above facts and the applicable law, the court finds that

defendant had legitimate, nondiscriminatory reasons for terminating plaintiff's employment.

**Retaliation**

{¶34} Plaintiff also alleges retaliation under R.C. 4112.02(I). R.C. 4112.02(I) provides that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Plaintiff may prove a retaliation claim through either direct or circumstantial evidence that unlawful retaliation motivated defendant's adverse employment decision. *Reid v. Plainsboro Partners, III*, 10th Dist. Franklin No. 09AP-442, 2010-Ohio-4373, ¶ 55.

{¶35} "To establish a prima facie case of retaliation under R.C. 4112.02(I), plaintiff had to establish the following: (1) [he] engaged in protected activity; (2) [defendant] knew of [his] participation in protected activity; (3) [defendant] engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action." *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 40. "The establishment of a prima facie case creates a presumption that the employer unlawfully retaliated against the plaintiff." *Id.*

{¶36} Plaintiff alleges that ODOT retaliated against him for filing his EEOC charge. However, plaintiff's first attempt to file an EEOC action was not until June 20, 2012, the day after the final incident which led to the last chance agreement. The EEOC complaint was ultimately filed on July 2, 2012.

{¶37} Although plaintiff contends that "whether defendant is using the August 13, 2012 accident to disguise retaliation is a disputed issue of fact" and that he should not

have been mowing alone, there is no doubt that the accident was caused by plaintiff's failure to yield to the vehicle that struck the equipment he was operating. As state above, plaintiff did not contest the citation for the accident and he admitted that the accident was not caused by either hearing loss or any other health issue. Therefore, plaintiff's contention that ODOT's stated reason for his termination was false or pretextual is without merit. Thus, defendant is entitled to judgment as a matter of law as to plaintiff's claim for retaliation.

{¶38} For the foregoing reasons, the court finds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Hartman v. Ohio Dept. of Transp.*, 2016-Ohio-1254.]

| | |
|---|---|
| FRED HARTMAN | Case No. 2014-00790 |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Anderson M. Renick |
| v. | |
| | JUDGMENT ENTRY |
| OHIO DEPARTMENT OF<br>TRANSPORTATION | |
| Defendant | |

{¶39} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

David G. Torchia
911 Mercantile Library Building
414 Walnut Street
Cincinnati, Ohio 45202

Emily Simmons Tapocsi
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed February 19, 2016**
**Sent To S.C. Reporter 3/24/16**