| | |
|---|---|
| THOMAS HILBERT | Case No. 2015-00020 |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Anderson M. Renick |
| v. | |
| OHIO DEPARTMENT OF TRANSPORTATION | DECISION |
| Defendant | |

{¶1} On December 21, 2015, the parties filed cross-motions for summary judgment pursuant to Civ.R. 56. On January 4, 2016, the parties filed responses to the motions. On January 11, 2016, defendant, Ohio Department of Transportation (ODOT), filed a reply. On January 12, 2016, plaintiff filed both a reply and a motion for leave to file the same, which is GRANTED. The case is now before the court for a non-oral hearing on the motions.

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶4} On April 23, 1993, plaintiff began working for ODOT as a highway maintenance worker in defendant's District 8 office and he was eventually promoted to the position of Signal Electrician 2, a union bargaining unit position in the Ohio Civil Service Employee Association (OCSEA). Plaintiff first obtained a Class A commercial driver's license (CDL) during his probationary period as a highway maintenance worker and in that position, he drove trucks which required Class A certification. Plaintiff was also required to maintain a Class A CDL as a Signal Electrician 2. However, it is undisputed that plaintiff did not actually drive any equipment that required a Class A CDL while working as a Signal Electrician 2.

{¶5} On August 16, 2013, plaintiff was stopped by an Ohio State Highway Patrol trooper for a turn signal violation while driving home from a concert and he admitted that he had consumed two beers. After plaintiff refused a Breathalyzer test, he was cited for operating a vehicle while under the influence of alcohol and placed under an administrative license suspension (ALS), pursuant to R.C. 4511.191.

{¶6} The next day plaintiff contacted his supervisor, James Judd, and related what had happened the night before. Judd was advised by defendant's safety director, Amy Augsparger, to direct plaintiff to use vacation and personal leave while he was unable to drive or report to work.

{¶7} On September 4, 2013, plaintiff pleaded guilty to reckless operation of a motor vehicle in the Hamilton County Municipal Court, resulting in a six-month suspension of his license, effective August 16, 2013, and he was granted limited driving privileges "to from and during work" and to any treatment and medical appointments. (Plaintiff's deposition, Exhibit A.) On the same date, the municipal court issued an order which terminated the ALS and waived the ALS fee. *Id*.

{¶8} The following day, plaintiff contacted both Jim Fife, a human resources administrator, and Mike Brown, ODOT's Labor Relations Officer for District 8, and reported the conclusion of his traffic case and the limited restoration of his driving privileges.  Brown testified that on numerous occasions he asked plaintiff whether his CDL privileges had been restored and plaintiff replied "no."  (Brown's deposition, page 28.)  Brown discussed plaintiff's status with Bobby Johnson, ODOT's Labor Relations Administrator, and Steve Mary, ODOT's deputy director in District 8, and subsequently a decision was made to initiate disciplinary proceedings against plaintiff because his union contract provided that any suspension of his CDL for more than 120 days required that he either resign or be removed from employment.  (Johnson affidavit, ¶ 7).

{¶9} On September 12, 2013, plaintiff contacted Shananne Middleton, the benefits coordinator for District 8, and requested FMLA leave.  On September 20, 2013, plaintiff's physician, Dr. Jason Hoke completed an FMLA medical certification form.  (Plaintiff's deposition, Exhibit C.)  Plaintiff testified that, on the same day, Brown had attempted to persuade him to resign.  Four days later, Middleton processed the FMLA forms and forwarded them to ODOT's human resources department.

{¶10} On September 20, 2013, ODOT provided plaintiff with written notice of a pre-disciplinary hearing that was scheduled for September 25, 2013.  (Plaintiff's deposition, Exhibit E.)  Plaintiff was specifically informed that he was charged with violating Directive WR-101, Item 27:

{¶11} "Other actions that could compromise or impair the ability of the employee to effectively carry out his/her duties as a public employee.

{¶12} "The basis of the charge is as follows:  On August 16, 2013 your Commercial Driver's License was placed on ALS suspension.  The ALS suspension is for a period greater than 120 days."  (Plaintiff's deposition, Exhibit E.)

{¶13} According to plaintiff, two union members attended the hearing and represented him.  After the pre-disciplinary hearing, the hearing officer determined that

probable cause existed to terminate plaintiff's employment.  Johnson determined that plaintiff's Class A CDL would remain suspended for more than 120 days and that his union contract required that he should be removed from employment.  (Johnson's affidavit, ¶ 8.)  On September 30, 2013, ODOT's director, Jerry Wray, issued a letter stating that plaintiff's employment would be terminated effective October 4, 2013. (Plaintiff's deposition, Exhibit F.)

{¶14} Plaintiff brought this action alleging disability discrimination pursuant to R.C. 4112.02 and 4112.99, and violation of his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. 2611 et seq.  Defendant argues that plaintiff cannot prevail on his claims because the recommendation to terminate his employment was not related either to his purported disability or to his requests to take FMLA leave. Defendant further contends that plaintiff cannot show that defendant's legitimate, non-discriminatory reason for imposing discipline and subsequently terminating his employment was pretext for retaliation or disability discrimination.

{¶15} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. * * * Discriminatory intent may be proven by either direct or indirect evidence."  *Hardgrow v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-919, 2012-Ohio-2731, ¶ 18.  In this case, plaintiff does not appear to suggest that there is direct evidence of discriminatory intent.  Absent direct evidence, Ohio courts resolve claims of employment discrimination using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Canady v. Rekau & Rekau, Inc.*, 10th Franklin Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 22.

**FMLA**

{¶16} The FMLA prohibits employers from discriminating against employees for exercising their rights under the Act. Section 2615(a)(2).  "Basing an adverse

employment action on an employee's use of leave or retaliation for exercise of FMLA rights is therefore actionable." *Ressler v. AG*, 10th Dist. Franklin No. 14AP-519, 2015-Ohio-777, ¶ 14, citing *Skrjanc v. Great Lakes Power Serv. Co.* (C.A.6, 2001), 272 F.3d 309.

{¶17} There are two distinct theories of recovery under the FMLA: 1) interference, sometimes referred to as entitlement, and 2) retaliation, sometimes referred to as discrimination. *Randolph v. Grange Mut. Cas. Co.*, 185 Ohio App.3d 589, 2009-Ohio-6782, ¶ 8 (10th Dist.)  For an interference claim, the issue is whether the employer provided its employee the entitlements set forth in the FMLA; the employer's intent is not a relevant part of the analysis. *Id.*, citing *Edgar v. JAC Prods., Inc.* (C.A.6, 2006), 443 F.3d 501, 507.  For a retaliation claim, the employer's motive is relevant because such claims impose liability on an employer that acts against an employee specifically because the employee invoked FMLA rights. *Id.*, citing *Edgar* at 508.

{¶18} An employee can prove FMLA interference or retaliation circumstantially, using the method of proof established in *McDonnell Douglas Corp. v. Green, supra. Ressler,* at ¶ 14.  If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas, supra,* at 802.  If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision. *Id.*

{¶19} To establish a prima facie case of FMLA interference, plaintiff must establish that 1) he was an eligible employee, 2) ODOT is a covered employer, 3) he was entitled to leave under the FMLA, 4) he gave ODOT notice of his intent to take leave, and 5) ODOT denied his right to be restored to the same position or a comparable one. *Niles v. Nat'l Vendor Servs.*, 10th Dist. Franklin No. 10AP-128, 2010-Ohio-4610, ¶ 14, citing *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (C.A.6, 2004).

{¶20} Pursuant to FMLA regulations "if the employee is unable to perform the essential functions of the position or a comparable one when FMLA leave expires, the employee is not entitled to reinstatement." *Niles, supra* at ¶ 15, citing *Reynolds v. Phillips & Temro Industries, Inc.*, 195 F.3d 411, 414 (C.A.8, 1999). Furthermore, an employee "'who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request.'" *Kemper v. Springfield Twp.*, 1st Dist. Hamilton Nos. C-110514, C-110546, 2012-Ohio-2461, ¶ 22, quoting *Arban v. West Publishing Corp.*, 345 F.3d 390, 401 (6th Cir.2003).

{¶21} The evidence shows that both plaintiff's union contract and his ODOT position description included a Class A CDL as a requirement of his position. Therefore, once plaintiff's CDL was suspended, he was not entitled to "be restored to the same position." Plaintiff did not request FMLA leave until after his license was suspended. Consequently, he cannot prove his prima facie case of FMLA interference.

{¶22} "To establish a prima facie case of retaliation circumstantially, a plaintiff must show that: (1) [he] exercised rights afforded by FMLA, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between [his] exercise of rights and the adverse employment action." *Ressler* at ¶ 14, citing *Zechar v. Ohio Dept. of Edn.*, 121 Ohio Misc.2d 52, 2002-Ohio-6873, ¶ 9.

{¶23} There is no dispute that plaintiff exercised his rights under the FMLA and that his termination was an adverse employment action. However, defendant argues that there was no causal connection between any protected FMLA activity and any adverse employment action.

{¶24} If an adverse action was considered *before* plaintiff engaged in protected activity, there is no inference of causation. *See Prebilich-Holland v. Gaylord Entertainment Co.,* 297 F.3d 438, 443-444 (6th Cir.2002) (finding that close proximity creates no inference of causation when the termination procedure was instituted several

days before knowledge of protected status or activity).  "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity."  *Sosby v. Miller Brewing Co.,* 415 F. Supp. 2d 809, 822 (S.D.Ohio 2005), citing *Smith v. Alien Health Sys., Inc.,* 302 F.3d 827, 834 (8th Cir.2002).

{¶25} Furthermore, "'[a] reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory * * * an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery.'" *Anderson v. Wellman Prods. Group*, 157 Ohio App. 3d 565, 573, 2004-Ohio-3420 (9th Dist.).  "[I]f an employee's discharge would have occurred regardless of [his] request for FMLA leave, then that employee may be discharged even if discharge prevents [his] exercise of any possible right to FMLA leave."  *Id.* at 572.

{¶26} Brown testified that sometime in August 2013, he informed plaintiff that he needed to retain his CDL to keep his job and that plaintiff replied that he was going to retain counsel to help him have his driving privileges restored.  (Brown deposition, page 14.)  As discussed above, Brown testified that he asked plaintiff on numerous occasions about the status of his CDL and plaintiff responded that his privileges had not been restored.  Inasmuch as plaintiff was informed that suspension of his CDL could result in the termination of his position well before he requested FMLA leave, there is no inference of causation.  Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that there was no causal connection between plaintiff's FMLA request and the decision to terminate his employment based upon the suspension of his CDL.

{¶27} Even if plaintiff had established a prima facie case of retaliation, he could not prevail if defendant had legitimate, nondiscriminatory reasons for terminating his employment.  *McDonnell Douglas, supra.*  There is no dispute that plaintiff's union contract provided that plaintiff's employment would be terminated if he refused to resign

after the suspension of his Class A CDL.  (Johnson affidavit, ¶ 7; Exhibit D.)  Plaintiff admitted that his CDL was suspended and the evidence that was obtained by ODOT shows that the suspension remained in place at the time of his pre-disciplinary hearing. (Johnson affidavit, ¶ 6; Exhibit C.)  Plaintiff's own notes from the pre-disciplinary hearing show that "everyone agreed" that his CDL was suspended.  (Plaintiff's deposition, Exhibit L.)  Upon review of the hearing officer's recommendation, ODOT's director determined that just cause existed to terminate plaintiff's employment.

{¶28} Based upon the undisputed evidence and the applicable law, the court finds that defendant had legitimate, nondiscriminatory reasons for terminating plaintiff's position.  Accordingly, defendant is entitled to judgment as a matter of law as to plaintiff's FMLA claims.

**Disability discrimination**

{¶29} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of an employee's disability, to refuse to hire or otherwise to discriminate against that person.  *Ressler, supra*, at ¶ 16. In order to establish a prima facie case of disability discrimination, plaintiff must demonstrate that: 1) he was disabled, 2) an adverse employment action was taken by an employer, at least in part, because of his disability, and 3) although disabled, plaintiff can safely and substantially perform the essential functions of the job in question. *Id*., citing *Debolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, ¶ 39, 2001-Ohio-3996 (10th Dist.2001); *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571, 1998-Ohio-410 (1998).  The burden of proof framework that applies to federal Title VII employment discrimination cases, set forth in *McDonnell Douglas*, also applies to Chapter 4112 discrimination cases.  *See Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 1996-Ohio-265 (1996).

{¶30} To establish a prima facie case of disability discrimination, a plaintiff must demonstrate: 1) that he was disabled; 2) that an adverse employment action was taken by his employer at least in part because plaintiff was disabled, and 3) that plaintiff, even though disabled, can safely and substantially perform the essential functions of the job in question. *Id.* at 571. "Because an employee must prove all three elements in order to establish a prima facie case of disability discrimination, the failure to establish any single element is fatal to a discrimination claim." *Taylor v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-385, 2011-Ohio-6060, ¶ 20.

{¶31} With regard to plaintiff's alleged disability, plaintiff relates that he is an alcoholic and that defendant discriminated against him because of his alcoholism.

{¶32} Federal and state disability discrimination claims, whether brought under the Americans with Disabilities Act, 42 U.S.C. 12112 et seq. (ADA) or Ohio's anti-discrimination statute, R.C. 4112, are subject to the same evidentiary standards and may be evaluated concurrently. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir.2010). In order to establish a claim for disability discrimination, the plaintiff must first establish that he is "disabled" within the meaning of the ADA. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997). The Americans With Disabilities Act Amendments Act of 2008 (ADAAA) applies in cases where the alleged discriminatory acts occurred after January 1, 2009. *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566-567 (6th Cir.2009).

{¶33} Under the ADAAA, "disability" means:

{¶34} "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

{¶35} "(B) a record of such an impairment; or

{¶36} "(C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. 12102(1).

**{¶37}** Although plaintiff contends that two unnamed psychologists told him he had signs of alcoholism, he testified that Dr. Hoke neither expressed concern about plaintiff's use of alcohol nor diagnosed him as an alcoholic. Furthermore, plaintiff has not submitted any evidence to show that his alcohol use substantially limits a major life activity.

**{¶38}** Based upon the undisputed evidence, the only reasonable conclusion is that plaintiff's alleged alcoholism does not constitute a disability under the ADAAA. Furthermore, the evidence presented does not support an inference that plaintiff was removed from his position, at least in part, because of the alleged disability. In his motion for summary judgment, plaintiff admits that there is no evidence that his alleged alcoholism affected his job performance. (Page 18.) Therefore, plaintiff failed to demonstrate a genuine issue of material fact with regard to a prima facie case of disability discrimination.

**{¶39}** Even if plaintiff's alcoholism were a disability, he was terminated pursuant to the terms of the CBA for failure to maintain a Class A CDL. The U.S. 6th Circuit Court of Appeals has noted that "there is a distinction between taking an adverse job action for unacceptable misconduct and taking such action solely because of a disability, even if the misconduct is "caused" by the disability. *Martin v. Barnesville Exempted Village School Dist. Bd. Of Educ.*, 209 F.3d 931, 934-935 (6th Cir.2000), citing *Maddox v. University of Tennessee*, 62 F.3d 843, 847 (6th Cir.1995). "The ADA specifically provides that an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees "even if any unsatisfactory performance is related to the alcoholism of such employee," thereby clearly distinguishing the issue of misconduct from one's status as an alcoholic. 42 U.S.C. § 12114(c)(4)." *Id.*

**{¶40}** Plaintiff admitted that no one at ODOT ever told him either that it was believed he was an alcoholic or that he was being terminated for that reason. (Plaintiff's

deposition, pages 100-101.)  Based upon the evidence, the court finds that defendant had a legitimate, non-discriminatory reason to terminate plaintiff's employment. Furthermore, plaintiff has not presented any evidence which supports an inference that the legitimate reasons offered by ODOT were not its true reasons, but were a pretext for discrimination.   Therefore, defendant is entitled to judgment as a matter of law on plaintiff's disability claim.

{¶41} For the foregoing reasons, and construing the facts most strongly in plaintiff's favor, the court finds that there is no genuine issue as to any material fact and that defendant is entitled to summary judgment as a matter of law.   Accordingly, defendant's motion for summary judgment shall be granted and plaintiff's motion for summary judgment shall be denied.


PATRICK M. MCGRATH
Judge

[Cite as *Hilbert v. Ohio Dept. of Transp.*, 2016-Ohio-1256.]

THOMAS HILBERT

      Plaintiff

      v.

OHIO DEPARTMENT OF
TRANSPORTATION

      Defendant

Case No. 2015-00020

Judge Patrick M. McGrath
Magistrate Anderson M. Renick

JUDGMENT ENTRY

{¶42} A non-oral hearing was conducted in this case upon both plaintiff's and defendant's motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED, plaintiff's motion for summary judgment is DENIED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

                              PATRICK M. MCGRATH
                              Judge

cc:

John H. Forg, III
P.O. Box 72
West Chester, Ohio 45071-0072

Peter E. DeMarco
Timothy M. Miller
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed February 24, 2016**
**Sent To S.C. Reporter 3/24/16**